IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Brenda Rotureau, individually and as executrix of the estate of Joseph P. Rotureau deceased, | ) ) ) ) | Civil No. 2:09-cv-1388-DCN |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Robert P. Chaplin, III, and Robert P. Chaplin, IV, | ) ) ) | **ORDER AND OPINION** |
| Defendants. | ) ) ) | |

This matter is before the court on defendants' motions to dismiss plaintiff's complaint in its entirety, or in the alternative, to strike plaintiff's malpractice cause of action as to defendant Robert P. Chaplin, III (Chaplin, III), and/or the portions of plaintiff's complaint alleging wrongdoing by both defendants against Mary E. Martin, the aunt of plaintiff's decedent. The case involves a dispute over the sale of two tracts of land on Yonges Island. Plaintiff's decedent and late husband, Joseph Rotureau, allegedly sold one tract each to defendant Robert P. Chaplin, IV (Chaplin, IV), and defendant Chaplin, III. Plaintiff alleges that Chaplin, III, who was also Joseph Rotureau's attorney, negotiated both sales for a total purchase price of $1,100,000. Plaintiff claims that Chaplin, IV did not pay the entire purchase price for one tract, and Chaplin, III paid $100,000 less than the agreed upon price for the second tract. Plaintiff also claims that Chaplin, III committed professional malpractice by acting for his own financial benefit instead of acting in the interests of his clients, Joseph Rotureau and Mary E. Martin. For

1

the reasons set forth below, the court grants defendants' motions and dismisses plaintiff's complaint.

## I. BACKGROUND

On May 27, 2009, plaintiff filed a five-count complaint alleging: (1) plaintiff did not receive payment for the sale of Tract A; (2) plaintiff received insufficient payment for the sale of Tract C; (3) conversion of the balance due for Tract C; (4) the need for equitable relief in the form of a trust and lien sought for Tracts A and C; and (5) attorney malpractice committed by defendant Chaplin, III. Compl. ¶ 6-26. The claims arise out of the sale of two tracts of land (Tracts A and C), which occurred on September 7, 2005. On that date, Mary E. Martin, the aunt of plaintiff's decedent, Joseph Rotureau, sold Tracts A and C to Joseph Rotureau, who then immediately sold Tract A to Chaplin, IV, and Tract C to Chaplin, III. Plaintiff's decedent sold Tract A to Chaplin, IV, for $500,000. Plaintiff's decedent did not receive a note or a mortgage securing the purchase price for this property; however, a HUD-1 statement "purports to show that [a mortgage] had been given." Compl. ¶ 7. Plaintiff claims that Chaplin, IV never paid the purchase price for this tract, but in response to a demand for payment, and in an effort to substitute Chaplin, IV's obligation, Chaplin, III later presented a note in the amount of $400,000 to plaintiff. Compl. ¶ 9.

Plaintiff's decedent allegedly agreed to sell Tract C to Chaplin, III for $600,000, reserving a life estate in the parcel for Ms. Martin. Plaintiff's decedent executed a deed and delivered it to Chaplin, III. Chaplin, III recorded the deed and related documents, identifying Chaplin, IV as grantee. No HUD-1 statement was prepared pursuant to this

transaction. Chaplin, III later paid plaintiff's decedent $500,000 of the purchase price for Tract C. Chaplin, III then claimed that he used the $100,000 balance owed "for Ms. Martin." Compl. ¶ 14. This use was allegedly not authorized by plaintiff's decedent, and plaintiff claims that the use of these funds amounted to "unlawful conversion." Compl. ¶ 16. Plaintiff also seeks a trust and lien upon both tracts of land for the amounts owed, along with interest "as though [Mr. Rotureau] had advanced the purchase price and was entitled to a purchase money mortgage and same should be given the status of a purchase money mortgage, ahead of all other liens except property taxes." Compl. ¶ 18.

Plaintiff alleges that defendant Chaplin, III, an attorney representing both plaintiff's decedent and Ms. Martin, committed malpractice by taking advantage of plaintiff's decedent, who suffered from pancreatic cancer, and Ms. Martin, who was almost 100 years old and of allegedly diminished capacity. Chaplin, III prepared the deeds for Tracts A and C, and he also took control of some of Ms. Martin's finances and affairs while acting as her attorney. Plaintiff claims that Chaplin, III was, in essence, purchasing the properties for himself and using Chaplin, IV as a straw man, and Chaplin, III should have disclosed that he was "acting in his individual capacity in the purchase of these properties." Compl. ¶ 21. According to the complaint, Chaplin, IV did not have the financial ability to pay the $1.1 million price tag for the properties, and following Ms. Martin's death and the termination of her life estate, Chaplin, III moved into her home on Tract A. Compl. ¶ 21. Plaintiff claims that Chaplin, III violated the South Carolina Rules of Professional Conduct by engaging in various conflicts of interest and overreaching. Plaintiff, as sole beneficiary of her husband's estate, seeks the money owed for the real

estate transactions, a full accounting for the funds claimed to be used by Chaplin, III for Ms. Martin, the creation of a trust for all sums due from the real estate transactions, and any damages attributable to Chaplin, III's malpractice.

Defendants moved to dismiss plaintiff's entire complaint, or in the alternative, to dismiss the malpractice claims against Chaplin, III, and/or the allegations that defendants were involved in wrongdoing against Ms. Martin. Defendants assert that plaintiff fails to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6). The defendants present several arguments in support of this assertion.

Defendants first argue that counts (1)-(4) of plaintiff's complaint are barred by the statute of limitations under S.C. Code Annotated § 15-3-530 (1) and (4), which establish a three-year statute of limitations on an action involving a contract or obligation (with certain exceptions), and for "an action for taking, detaining, or injuring any goods or chattels including an action for the specific recovery of personal property." S.C. Code Ann. § 15-3-530(1), (4) (1976). Defendants acknowledge that the scope of a 12(b)(6) motion is limited to the pleadings; however, they cite Goodman v. Praxair, Inc., 494 F.3d 458 (4th Cir. 2007), which holds that "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Defs.' Mem. in Supp. 1. Defendants argue that the transactions at issue occurred on September 7, 2005, and the plaintiff did not file her complaint until May 27, 2009. Therefore, the complaint was filed well after the three-year statute of limitations.

Next, the defendants assert that count (5) of plaintiff's complaint, the malpractice

4

claim, is barred by the abatement and survival statute, S.C. Code Annotated § 15-5-90, which defendants argue allows certain tort claims to survive the death of the plaintiff, except for "claims of slander, malicious prosecution, and fraud." Defs.' Mem. in Supp. 2 (citing Faircloth v. Finesod, 938 F.2d 513, 516 (4th Cir. 1991)). Defendants liken plaintiff's claims of malpractice to "fraud," thus taking the claims outside of "[c]auses of action for and in respect to any and all injuries and trespasses to and upon real estate" protected by § 15-5-90. Defs.' Mem. in Supp. 3 (internal citations omitted). Defendants discuss a similar holding in Bemis v. Waters, 170 S.E. 432 (S.C. 1933), to support this argument. Defs.' Mem. in Supp. 3.

The third argument raised by defendants is that plaintiff's malpractice claim should fail because plaintiff's complaint was not accompanied by an affidavit of an attorney (as an expert witness) as required by S.C. Code Annotated § 15-36-100. Defendants cite subsection (C)(1), which holds that such a failure subjects a complaint to dismissal for failure to state a claim.

Defendants then argue that plaintiff lacks standing and capacity to sue for any alleged wrongdoing directed at Ms. Martin. Defendants acknowledge that plaintiff was appointed as Successor Personal Representative of Ms. Martin's estate, and plaintiff could bring an action on behalf of Ms. Martin's estate in this capacity; however, plaintiff did not make any such claim in her federal complaint. Defendants also note that plaintiff has filed an almost identical suit against defendants on behalf of Ms. Martin's estate in state court.

Another ground for dismissal asserted by defendants is that the court lacks subject

5

matter jurisdiction "[t]o the extent the Complaint alleges causes of action on behalf of the Estate of Mary E. Martin or the extent the Estate of Mary E. Martin is a necessary or indispensable party this action" because the addition of Ms. Martin would destroy complete diversity between the parties. Defs.' Mem. in Supp. 5. Defendants argue that Ms. Martin is an indispensable party because she had an interest in the real estate at the time of the transaction in question, and under an FRCP 19(b) analysis

> [a]ny judgment in this action without consideration of the claims of the Martin Estate could prejudice the Defendants by requiring them to litigate separately what are essentially the same claims, possibly impairing their ability to discover and/or to introduce evidence, and subjecting them to potential duplicate recoveries. Moreover, piecemeal litigation of these issues will be confusing at best to the trier of fact, who will continuously have to delineate between claims for the Rotureau Estate and the Martin Estate.

Defs.' Mem. in Supp. 7.

In the alternative to complete dismissal of the complaint, defendants argue that the portions of plaintiff's complaint alleging wrongdoing of defendants against Ms. Martin, paragraphs 20-22, should be stricken pursuant to FRCP 12(f). The defendants claim that the allegations made in the paragraphs above are "immaterial" or "impertinent" to the action between plaintiff and defendants.

In response to defendants' motion to dismiss, plaintiff argues that by adding exhibits outside of the pleadings, defendants have converted their 12(b)(6) motion into a motion for summary judgment under FRCP 56. Plaintiff also argues that defendants have failed to incorporate "a concise statement of the facts pursuant to Local Rule 7.05(A)(1)(2)." Pl.'s Resp. 1.

Plaintiff states that her claims are not barred by the three-year statute of

limitations cited by defendants. Plaintiff looks to Georgia state law, stating that "claims of an unrepresented Estate are tolled against the Statute of Limitations during the period where there is no representative." Pl.'s Resp. 2. Plaintiff also cites S.C. Code Annotated § 62-3-109, which tolls the claims of an estate for a period of eight months beyond the three-year statute of limitations period mentioned above. Plaintiff argues that Chaplin, III's presentment of a note in June 2007, in an attempt to satisfy the amount owed for Tract A, constituted a new obligation, and the statute of limitations period should start anew from that date.

Plaintiff also claims that Page v. Lewis, 26 S.E.2d 569 (S.C. 1943), and Hughey v. Mooney, 320 S.E.2d 475 (S.C. 1984) overruled the Bemis case relied on by defendants in their argument that plaintiff's claims do not survive the death of plaintiff's decedent. Plaintiff cites the South Carolina Supreme Court in Page, which held "that the 'causes of action for rescission or cancellation of a deed or contract for fraud descends to the heirs if they existed in the ancestor unimpaired of the time of his death.'" Pl.'s Resp. 3.

Plaintiff asserts that her claim for malpractice is not "fatally deficient" because it failed to incorporate an affidavit of an attorney (an expert witness). Pl.'s Resp. 3. Plaintiff states that S.C. Code Annotated § 15-36-100(B) is only a procedural requirement which does not apply in federal court under the Federal Rules of Civil Procedure.

Plaintiff lastly responds to defendants' arguments regarding Ms. Martin. Plaintiff admits that she has filed a lawsuit against defendants on behalf of Ms. Martin's estate in state court, and plaintiff states that diversity is not destroyed in the case before the court because plaintiff is not alleging any causes of action on behalf of Ms. Martin. Plaintiff

states that the allegations in the complaint involving Ms. Martin are relevant to plaintiff's claims and should not be stricken. Plaintiff adds that Ms. Martin is not an indispensable party to the case before the court because "while the transactions are interwoven, the harm done was done to separate parties by separate parties." Pl.'s Resp. 5. Plaintiff admits that some of the evidence would be similar in each; however, "the issues of negligence, malpractice, fraud and/or undue influence are different with regard to the separate Plaintiffs and should not be combined to the prejudice of each of the Defendants or to destroy the diversity jurisdiction of this Court." Pl.'s Resp. 5.

## II. DISCUSSION

FRCP 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (internal citations omitted).

FRCP 12(b)(6) governs motions asserting a "failure to state a claim upon which relief can be granted." In order

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. (internal citations omitted). The Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Court added that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (internal citations omitted). The Court continued:

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

Id. (internal citations omitted).

Goodman v. Praxair, Inc., addresses the issue of whether a party can assert an affirmative defense in a 12(b)(6) motion:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relative rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint*."

494 F.3d at 464 (internal citations omitted).

Defendants argue that plaintiff's claims regarding the two tracts of land are barred by the statute of limitations under S.C. Code Annotated §15-3-530(1) and (4), which state that the following claims must be brought within three years:

(1) an action upon a contract, obligation, or liability, express or implied,

excepting those provided for in Section 15-3-520[1];
(4) an action for taking, detaining, or injury any goods or chattels including

an action for the specific recovery of personal property.

S.C. Code Ann. § 15-3-530 (1976). "A statute of limitations generally begins to run on the date the cause of action accrues, and a breach of contract action usually accrues at the time a contract is breached or broken." State v. McClinton, 631 S.E.2d 895, 898 (S.C. 2006).

Four of the five claims asserted by plaintiff are based on the alleged breach of a land sale contract; however, no written contract exists. As a result, plaintiff's claims related to the land sale contract fall under the statute of limitations set out by S.C. Code Annotated § 15-3-530(1), and not the exception under § 15-3-520(a), which requires a "contract in writing." Plaintiff's complaint clearly states that the sale of the two tracts of land occurred on September 7, 2005. Plaintiff filed her complaint in this court on May 27, 2009. Thus, plaintiff's claims regarding the two land sale transactions are barred by the three-year statute of limitations. Pursuant to Goodman, the complaint provides sufficient facts for defendants to raise the statute of limitations defense in their motion to dismiss. In reaching this decision, the court has not considered any matters presented outside the pleadings which would convert defendants' motions into motions for summary judgment under Federal Rules of Civil Procedure 12(d) and 56.

Georgia state law is inapplicable to the case before the court and has no bearing

---

[1]S.C. Code Annotated 15-3-520(a) (1976) states that "an action upon a bond or other contract in writing secured by a mortgage of real property" must be brought within 20 years. Subsection (b) is inapplicable; that section covers actions upon sealed instruments.

on whether the statute of limitations should be tolled. S.C. Code Annotated § 62-3-109, while applicable, would merely toll the claims of an estate for eight months beyond the three-year statute of limitations established by § 15-3-530. This statute offers no relief for plaintiff, whose claims were filed more than three years and eight months after the cause of action accrued.[2]

Plaintiff's claim regarding the alleged malpractice of attorney Chaplin, III also fails. S.C. Code Annotated § 15-36-100(B) requires that

> in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G)[3] . . ., the plaintiff must file as a part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

S.C. Code Ann. § 15-36-100(B) (1976). Subsection 15-36-100(C)(1) states that if plaintiff fails to file the affidavit, "the complaint is subject to dismissal for failure to state a claim." S.C. Code Ann. § 15-36-100(C)(1) (1976).

Plaintiff argues that the affidavit requirement of § 15-36-100 is merely a "procedural" requirement which does not apply in federal court. Section 15-36-100 is part of the substantive law of South Carolina and is applicable in the case before the court. The court dismisses plaintiff's malpractice claim without prejudice as a result of plaintiff's failure to comply with § 15-36-100.

---

[2]Plaintiff filed her complaint three years, eight months, and twenty-one days after the contract was allegedly breached.

[3]S.C. Code Annotated § 15-36-100(G)(2) (1976) states that the section applies to "attorneys at law."

### III.  CONCLUSION

For the foregoing reasons, it is unnecessary for the court to consider the parties' arguments regarding the applicability of South Carolina's abatement and survival statute and whether Mary E. Martin is an indispensable party to this case.  The court **GRANTS** defendants' motions and dismisses counts (1)-(4) of plaintiff's complaint with prejudice, and count (5) without prejudice.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**December 21, 2009**
**Charleston, South Carolina**